JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| IN RE: ROBERT A. FERRANTE | CASE NO. SA CV 16-2076 MWF |
|---|---|
| | ORDER AFFIRMING THE BANKRUPTCY COURT'S ORDER AUTHORIZING SALE |

Before the Court is an appeal from the United States Bankruptcy Court (the Honorable Theodor C. Albert, United States Bankruptcy Judge). Lt. Col. William L. Seay appeals from the Bankruptcy Court's Order Granting Trustee's Motion for an Order Authorizing a Sale of Property Under 11 U.S.C. § 363(f)(5) ("Order Authorizing Sale"). This Court has jurisdiction over the appeal.

Col. Seay submitted an Opening Brief on September 5, 2017. (Docket No. 26). On November 2 and 6, 2017, respectively, Appellee Thomas H. Casey, Chapter 7 Trustee ("Trustee"), and Appellee Bank of America, N.A. ("BofA"), separately submitted their answering Briefs. (Docket Nos. 37 & 39). And on December 1, 2017, Col. Seay submitted his Reply Brief. (Docket No. 43).

The Order Authorizing Sale is **AFFIRMED**. Col. Seay failed to seek a stay of the Order Authorizing Sale or the challenged transaction authorized by the Order – the payment of approximately $1.1 million to BofA from Harbor Island Property sales proceeds – pending appeal. His appeal is thus equitably moot.

1

Col. Seay's arguments on due process likewise lack merit. He chose not to present any substantive arguments about the BofA Lien to the Bankruptcy Court while, on multiple occasions, acknowledging the BofA Lien and its seniority to his own interests. Col. Seay's argument that BofA is somehow estopped from asserting an interest in the proceeds of the Harbor Island Property sale is also without merit, as BofA held an *in rem* security interest in the Harbor Island Property and thus had no obligation to participate in the underlying bankruptcy proceeding at all.

Finally, at a more fundamental level, Col. Seay's appeal of the Bankruptcy Court's Order Authorizing Sale is not the proper vehicle to challenge the validity and/or priority of the BofA Lien vis-à-vis the Seay Lien, or to argue that, for other equitable reasons, BofA should be disgorged of the proceeds of the Harbor Island Property sale; such arguments must be presented to the Bankruptcy Court or, perhaps, pursued in a separate lawsuit.

I. **BACKGROUND**

    A. **The Harbor Island Property and the Relevant Liens**

On January 11, 2010, Robert A. Ferrante ("Debtor") filed a Chapter 7 bankruptcy petition. The focus of this appeal is the distribution of the proceeds from the Trustee's December 2016 sale – pursuant to section 363 of the Bankruptcy Code – of real property located at 518 Harbor Drive, Newport Beach, California (the "Harbor Island Property"), which the Debtor had previously owned (through various trusts and intermediaries that shifted over time) and resided in. (Trustee's Supplemental Excerpts of Record ("TER") 697).

The Harbor Island Property had not always been an asset of the Debtor's bankruptcy estate. When he filed for bankruptcy in January 2010, the Debtor indicated that he had no interest in any real estate. (BofA's Supplemental Excerpts of Record ("BER") 1). But in April 2014, following an adversary proceeding that the Trustee had initiated, the Trustee succeeded in revoking title from a putative

2

Qualified Personal Residential Trust named 518 Harbor Island Trust (the "518 Trust"), of which the Debtor was the sole beneficiary, and obtained record title to the Harbor Island Property on behalf of the Debtor's estate. (TER 99).

When the Trustee obtained title to the Harbor Island Property it was subject to several liens, three of which are relevant to this appeal: (1) a deed of trust lien in favor of BofA, recorded on August 10, 1990 and valued at $1,065,391.08 (the "BofA Lien"); (2) a judgment lien in favor of Col. Seay, recorded on May 20, 2004 and initially valued at $2,471,057.16, that had, due to accruing interest, increased in value to $6,717,323.21 by the time the Trustee gained title to the Harbor Island Property (the "Seay Lien"); and (3), a deed of trust lien in favor of Remar Investments LP ("Remar"), recorded on December 27, 2010 and valued at $2,000,000.00 (the "Remar Lien"). (TER 100-03).

### B. The BofA Lien and the Shifting Harbor Island Property Title

The validity and priority of the BofA Lien are at the heart of Col. Seay's appeal. The Court thus provides a condensed background regarding how the BofA Lien came into existence and the Debtor's evidently purposeful efforts to obfuscate title to the Harbor Island Property.

The BofA Lien, which was first recorded on August 10, 1990, was created when non-parties Benjamin and Barbara Harris used the Harbor Island Property as collateral to secure a refinance loan from BofA in the amount of $1,920,000.00, for which they executed a promissory note in the same amount (the "Harris Note"). (TER 100, 794). On September 22, 1994, the Harrises conveyed title to the Harbor Island Property to the Debtor's 518 Trust. (Appellant's Opening Brief ("AOB") 7).

On October 27, 2000, while the Debtor was residing at the Harbor Island Property, BofA recorded a notice of default on the Harris Note and notified the Debtor that it intended to initiate foreclosure proceedings on the Harbor Island Property. (TER 797).

In connection with what Col. Seay has alleged to be a fraudulent scheme, the Debtor created a trust called 518 Harbor Island Drive Trust III ("Trust III"), and named Col. Seay as the Trust III grantor and sole trustee without his consent. (*Id.*). On January 4, 2001, with foreclosure proceedings imminent, the Debtor then submitted an application to BofA seeking an adjustable rate mortgage in the amount of $1,655,709.03 – the amount remaining under the Harris Note – for the putative purpose of purchasing a "secondary property," and forged Col. Seay's signature and fraudulently listed him as the grantor and sole trustee of Trust III on the loan application. (*Id.*). BofA accepted this new loan application on February 4, 2001. (*Id.*).

On March 19, 2001, the Debtor transferred title to the Harbor Island Property from the 518 Trust to Trust III. (TER 798, 898). On April 2, 2001, Bank of America released the Harrises from further liability under the Harris Note. (TER 798). Title to the Harbor Island Property was then re-conveyed back to the 518 Trust from Trust III on August 22, 2006. (TER 820, 898).

### C. Relevant Bankruptcy Court and Appellate Proceedings

In April 2014, after the Trustee had obtained title to the Harbor Island Property following litigation concerning the validity of the 518 Trust's status as a Qualified Personal Residential Trust, Col. Seay and the Trustee entered into a "carve-out" agreement whereby they would evenly split the proceeds of the sale of Harbor Island Property *after* the BofA Lien was satisfied. (BER 118-30). On May 27, 2014 the Bankruptcy Court approved the carve-out agreement. (BER 301). The carve-out agreement provides that the amount Col. Seay and the Trustee were to split "shall be calculated by subtracting from the gross sale proceeds … the payoff or other resolution (whether by litigation or otherwise) of the ***existing first deed of trust in favor of Bank of America and any other valid liens and encumbrances senior to the Seay Judgment lien*** …" (BER 122) (emphasis added). When Col.

Seay joined the Trustee's motion for Bankruptcy Court approval of the carve-out agreement, he acknowledged that he was "entitle[d] … to priority over all claims in the case ***except a Bank of America first trust deed which … preceded his lien***." (BER 208) (emphasis added).

In June 2015, Col. Seay filed a motion in the Bankruptcy Court to establish that the Seay Lien was perfected on May 20, 2004 (the date the abstract of judgment was recorded). (AOB at 5). In November 2015, the Bankruptcy Court granted Col. Seay's motion. (*Id.*). Remar, which contended the Remar Lien had priority over the Seay Lien, appealed the Bankruptcy Court's judgment in favor of Col. Seay to this Court. *See In re Ferrante*, No. SA CV 16-337 MWF, 2016 WL 4844073 (C.D. Cal. Sept. 13, 2016). On September 13, 2016, following a hearing, this Court affirmed the Bankruptcy Court's judgment. (*Id.*). Remar appealed this Court's decision, but Remar and Col. Seay ultimately settled and stipulated to the dismissal of Remar's appeal. *See In re Ferrante*, No. 16-56446, 2016 WL 9778620 (9th Cir. Dec. 28, 2016).

In June 2015, Col. Seay filed an adversary proceeding against BofA in the Bankruptcy Court. (TER 793). In his complaint, Col. Seay essentially alleged that the BofA lien was tainted by the Debtor's theft of Col. Seay's identity and challenged the "validity and priority" of the BofA lien. (TER 793, 796-806). Col. Seay sought declaratory relief based on the argument that "BofA has no perfected rights [in the Harbor Island Property], thereby rendering the first trust deed on the Harbor Island Property unenforceable or subordinate to the Seay Lien." (TER 807-08). Col. Seay also requested "an order declaring that any rights BofA is found to possess in [a lien on the Harbor Island Property] be declared void or subordinate to the Seay Lien under principles of estoppel and unclean hands." (*Id.*). In November 2015, the Bankruptcy Court granted BofA's motion to dismiss the complaint with leave to amend. (TER 853).

In December 2015, Col. Seay filed a first amended complaint, and BofA again filed a motion to dismiss. (TER 837; BER 423). In February 2016, the Bankruptcy Court granted BofA's motion, again with leave to amend. (TER 861). In April 2016, Col. Seay filed a second amended complaint, and BofA again moved to dismiss. (TER 876, 893). On June 30, 2016, the Bankruptcy Court held a hearing and issued a tentative order granting the motion to dismiss the second amended complaint, this time without leave to amend. (TER 933-39). But later that same day (June 30, 2016), Col. Seay voluntarily dismissed his adversary proceeding against BofA before the Bankruptcy Court issued a final order granting BofA's motion without leave to amend. (TER 945). Notwithstanding Col. Seay's voluntary dismissal, on July 12, 2016, the Bankruptcy Court issued an order granting BofA's motion to dismiss Col. Seay's second amended complaint without leave to amend, and noted that it was making "no determination as to the effect of the recent dismissal of the action by [Col. Seay]." (TER 949).

On September 28, 2016, the Trustee filed a motion for Bankruptcy Court authorization to sell the Harbor Island Property to a third party, free and clear of any liens (pursuant to section 363 of the Bankruptcy Code) for $4,800,000.00, and to distribute the sales proceeds according to the priority of the creditors. (TER 90, 97). In his motion, the Trustee noted the "undisputed liens to be paid upon close of the sale," and specifically noted that "[t]he BofA Lien is now unquestionably in first position and not in dispute and will be paid in full upon the close of the sale of the [Harbor Island] Property." (TER 100).

On October 19, 2016, Col. Seay filed a "conditional consent" (which Col. Seay now describes as an "opposition") to the Trustee's Harbor Island Property-sale motion, in which he consented to the motion on the condition that he be paid before Remar; Col. Seay raised no qualms about BofA being paid immediately in connection with the BofA Lien. (TER 443-50). Col. Seay concluded his

6

conditional consent by noting "that the sale should be approved in accordance with the Carve Out and that the funds should be ***immediately distributed*** to secured creditors in accordance with their security interests…" (TER 457) (emphasis added).

On October 28, 2016, due to the fact that Col. Seay's and Remar's conditional consents to the Harbor Island Property-sale motion were mutually exclusive (they each demanded to be paid before the other), the Trustee filed an amended sale proposal. (TER 488-99, 565-66). In response to the Trustee's amended proposal, Col. Seay filed an unconditional "Consent and Joinder to Trustee's Sale Motion" in which he contended that "[t]he property may be sold free and clear of all of these liens, as the trustee sets forth, under section 363(f)(5)…" and acknowledged that "Col. Seay is the largest lienholder in the estate ***second in priority to Bank of America***, which lien he contested [in the since-dismissed adversary proceeding]." (TER 650-51) (emphasis added).

On November 8, 2016, the Bankruptcy Court held a hearing on the Trustee's amended sale proposal. (TER 659-696). At this hearing, the Bankruptcy Court stated that it would not allow the Trustee to immediately pay off the Seay Lien upon the sale because the priority between the Seay Lien and the Remar Lien was in dispute at that time, as Remar's appeal of this Court's decision (affirming the Bankruptcy Court's decision that the Seay Lien had priority over the Remar Lien) was still pending in the Ninth Circuit – in other words, the hearing was before the parties settled and stipulated to dismissing the appeal. (TER 672). When Col. Seay's counsel realized that Col. Seay would not be paid on the Seay Lien immediately upon the sale of the Harbor Island Property, he revoked Col. Seay's consent. (*Id.*). The Bankruptcy Court noted that it would proceed with the sale under section 363(f)(5) of the Bankruptcy Code, which did not require Col. Seay's consent. (TER 679).

On December 8, 2016, the Bankruptcy Court entered the Order Authorizing Sale, through which the Bankruptcy Court authorized the Trustee to sell the Harbor Island Property for $4,800,000 million and immediately pay off the BofA Lien with a portion of the proceeds. (TER 698). Neither Col. Seay nor any other party to the bankruptcy proceeding requested a stay of the Order Authorizing Sale or any transactions authorized thereby pending appeal. (TER 707). The Trustee then sold the Harbor Island Property for $4,800,000 and distributed a portion of the proceeds to BofA pursuant to the Bankruptcy Court's order. (BER 315).

On December 12, 2016, Col. Seay filed a notice of appeal of the Order Authorizing Sale, challenging the section 363 sale and distribution. (TER 6). Col. Seay identified Remar and the Trustee as the only other relevant parties to the appeal; he did not identify BofA. (*Id.*). In his amended notice of appeal and statement of election, filed in this Court on December 13, 2016, Col. Seay described the Order Authorizing Sale he was appealing as an "[o]rder approving sale of estate property but denying distribution of proceeds owed to … Col. Seay until after Remar Investment L.P.'s appeal to Ninth Circuit … has been decided." (Docket No. 9).

On December 21, 2016, nine days after he had filed the notice of appeal, Col. Seay and Remar settled their dispute and the Bankruptcy Court approved the agreement, pursuant to which the Trustee promptly transferred $1.5 million of the Harbor Island Property sale proceeds to Col. Seay. (TER 754, 772).

On June 2, 2017, after he had settled with Remar and received $1.5 million, Col. Seay amended his statement of issues on appeal to focus not on the priority of the Seay Lien vs. the Remar Lien, but on BofA's entitlement to payment under the BofA Lien. (Docket No. 17).

Col. Seay raises two principal arguments in this current iteration of his appeal:

*First*, he argues that his due process rights were violated as a result of the Bankruptcy Court's failure to provide him with an adequate hearing prior to approving the sale of the Harbor Island Property and immediate payment of the BofA Lien. (AOB at 25-26). Col. Seay now purports to "seek[ ] to verify whether or not BofA took payment on its lien subject to the Seay lien" and to "challenge … the validity and extent of the BoA lien … at a trial of the issue." (AOB at 25).

*Second*, Col. Seay argues that BofA "is judicially estopped from now claiming an interest in the sales proceeds" because it did not sufficiently participate in the bankruptcy proceeding and has previously stated that it is not a creditor of the Debtor. (AOB at 27-30).

In response, BofA primarily argues that Col. Seay's appeal is "equitably moot" because he did not seek a stay of the Bankruptcy Court's Order Authorizing Sale pending appeal. (BofA Brief at 21-25). BofA also argues that Col. Seay's "due process" arguments are without merit because the Bankruptcy Court exercised proper discretion in authorizing the payment to BofA given Col. Seay's consistent acknowledgements that the BofA Lien had priority over the Seay Lien, and his failure to seriously pursue his current arguments in the Bankruptcy Court. (BofA Brief at 25-27). Finally, BofA counters that it is not judicially estopped from claiming an interest in the Harbor Island Property sales proceeds because it had no duty to participate in the bankruptcy proceeding in the first place given its status as a secured lienholder. (BofA Brief at 27-29)

## II. STANDARD OF REVIEW

A district court reviews a Bankruptcy Court's conclusions of law de novo and its findings of fact for clear error. *See, e.g., In re Int'l Fibercom, Inc.*, 503 F.3d 933, 940 (9th Cir. 2007). Pertinent to this appeal, a Bankruptcy Court's decision authorizing the sale of property or its decision regarding whether or not to hold an evidentiary hearing are each reviewed for an abuse of discretion. *Id.* at 946-47

9

(Bankruptcy Court did not abuse discretion in denying creditor's request for an evidentiary hearing); *In re Clark*, 266 B.R. 163, 168 (B.A.P. 9th Cir. 2001) ("Rulings on motions to sell property of the estate other than in the ordinary course of business pursuant to section 363[(b)] are reviewed for abuse of discretion.").

### III. DISCUSSION

The doctrine of "equitable mootness" "has some sway in bankruptcy cases where public policy values the finality of bankruptcy judgments because debtors, creditors, and third parties are entitled to rely on a final Bankruptcy Court order." *In re Thorpe Insulation Co.*, 677 F.3d 869, 880 (9th Cir. 2012). "Equitable mootness occurs when a 'comprehensive change of circumstances' has occurred so 'as to render it inequitable for this court to consider the merits of the appeal.'" *Id.* (quoting *In re Roberts Farms*, 652 F.2d 793, 798 (9th Cir. 1981)). The Ninth Circuit has articulated a four-step test to determine whether a bankruptcy appeal should be deemed equitably moot, with the first, and perhaps dispositive, step being whether or not the appellant sought a stay of the challenged order / transaction:

> We will look first at whether a stay was sought, for absent that a party has not fully pursued its rights. If a stay was sought and not gained, we then will look to whether substantial consummation of the plan has occurred. Next, we will look to the effect a remedy may have on third parties not before the court. Finally, we will look at whether the Bankruptcy Court can fashion effective and equitable relief without completely knocking the props out from under the plan and thereby creating an uncontrollable situation for the Bankruptcy Court.

*Id.* Where an appellant failed to seek a stay of the bankruptcy court's now-challenged decision pending appeal, a district court may affirm the bankruptcy court's decision on equitable mootness grounds. *See id.* ("A failure to seek a stay can render an appeal equitably moot") (citing *In re Roberts Farms*, 652 F.2d at 797-98).

10

It is undisputed that Col. Seay did not seek a stay of the Bankruptcy Court's Order Authorizing Sale, pursuant to which the Trustee sold the Harbor Island Property and immediately paid off the BofA Lien with a portion of the proceeds. Instead, he filed a notice of appeal (but no request to stay pending appeal) on December 12, 2016 that exclusively targeted the Bankruptcy Court's decision to delay paying Col. Seay his $1.5 million share of the sale proceeds until after Remar's appeal in the Ninth Circuit had been resolved, and that had absolutely nothing to do with BofA.

In his reply brief, Col. Seay argues, without any explanation or citation to authority, that "[t]hat factor [*i.e.*, seeking a stay] is not relevant here because the Seay Lien attached to the proceeds of the sale and protected him." (Appellant's Reply Brief at 14). While not entirely clear, Col. Seay is seemingly suggesting that the Seay Lien had priority over the BofA Lien and thus attached to the entirety of the $4.8 million sale proceeds, so he was entitled to sit back and allow the Bankruptcy Court to make the mistake of giving away approximately $1.1 million of Col. Seay's money to BofA and then try to poke holes in the BofA Lien and undo that transaction in this Court by way of an appeal at a later date. That is obviously not the law.

If Col. Seay has arguments about the legitimacy of the BofA Lien, or about the proper priority of the BofA Lien vis-à-vis the Seay Lien, he should have presented those arguments to the Bankruptcy Court. He had his chance to do that when he was engaged in the adversary proceeding against BofA between June 2015 and July 2016, but elected to voluntarily dismiss that proceeding when the Bankruptcy Court was poised to dismiss his second amended complaint against BofA without leave to amend. He could have allowed the Bankruptcy Court to enter judgment against him in connection with that adversary proceeding and then appealed that judgment. He did not. He could have commenced another similar adversary proceeding against BofA at any time before the Bankruptcy Court issued

11

the Order Authorizing Sale, which directed the immediate payment to BofA. Indeed, during the hearing counsel for Col. Seay recognized that he could have commenced a new adversary proceeding against BofA an hour after voluntarily dismissing the first one. He did not. Finally, as a last resort, Col. Seay could have sought a stay of the payment of the BofA Lien while he raised his current arguments about the legitimacy and/or priority of the BofA Lien. He did not.

Accordingly, this appeal is equitably moot.

And, putting aside the issue of equitable mootness, Col. Seay's present appeal of the Bankruptcy Court's Order Authorizing Sale is simply the wrong procedural vehicle through which to challenge the validity and/or priority of the BofA Lien or to raise other arguments regarding harm caused to Col. Seay by the Debtor's alleged theft of his identity and BofA's alleged participation in and/or enablement of that fraud. Arguments regarding the legitimacy and/or priority of the BofA Lien must be fully and fairly presented to the Bankruptcy Court and must be the subject of a final Bankruptcy Court order before they can be the proper subject of an appeal to this Court. They were not. And, as counsel for BofA acknowledged at the hearing, Col. Seay could at least attempt to commence a separate lawsuit against BofA relating to its alleged participation in the theft of Col. Seay's identity, but those issues were not the subject of the Order Authorizing Sale and are not the proper subject of this appeal.

In any event, Col. Seay's arguments on appeal lack merit. Col. Seay's failed ever to seriously challenge the legitimacy or priority of the BofA Lien in the Bankruptcy Court; he has acknowledged that the BofA Lien had priority over the Seay Lien; and the record lacks any indication that Col. Seay ever asked the Bankruptcy Court to hold a hearing (apart from the hearing on November 8, 2016, that it actually held) regarding the BofA Lien or the proper distribution of sales proceeds.

Accordingly, the Court is unpersuaded by Col. Seay's "due process" argument.

Finally, BofA is correct that it is not judicially estopped from claiming an interest in the Harbor Island Property sales proceeds because it had no duty to participate in the bankruptcy proceeding in the first place given its status as the holder of a lien secured by real property. (*See id.* at 27-29). "[F]or creditors holding liens secured by property," as the BofA Lien was, "filing a proof of claim and participating in the allowance process – indeed, participating in the bankruptcy process as a whole – is completely voluntary." *In re Blendheim*, 803 F.3d 477, 485 (9th Cir. 2015). "A creditor with a lien on a debtor's property may generally ignore the bankruptcy proceedings and decline to file a claim without imperiling his lien, secure in the *in rem* right that the lien guarantees him under non-bankruptcy law: the right of foreclosure." *Id.* (citing *U.S. Nat'l Bank in Johnstown v. Chase Nat'l Bank of N.Y.C.*, 331 U.S. 28, 33 (1947)).

Accordingly, Col. Seay's arguments – unsupported by any authority – that BofA was estopped from collecting on the BofA Lien because it took certain positions or failed to take certain positions in the underlying bankruptcy proceeding is without merit.

## IV. CONCLUSION

For the reasons discussed above, the Court **AFFIRMS** the Order Authorizing Sale.

IT IS SO ORDERED.

DATED: March 13, 2018

MICHAEL W. FITZGERALD
United States District Judge

CC: Bankruptcy Court

13